**In re GULFCOAST HOSPITALITY, INC., Debtor.**

**Gulfcoast Hospitality, Inc.**

**v.**

**Amstat Corporation, Phoenix Leasing, Inc., Phoenix Warehouse II, Inc., and Phoenix Leasing Cash Distribution Fund V, L.P., Defendants.**

**Bankruptcy No. 02–24899–8P1. Adversary No. 03–179.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 15, 2003.

Kurt E. Davis, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Debtor.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

(Doc. No. 11)

ALEXANDER L. PASKAY, Chief Judge.

This is a yet-to-be confirmed Chapter 11 case of Gulfcoast Hospitality Inc., d/b/a Wingate Inn (Debtor) and the matter before this Court is "Defendants' Phoenix Leasing Incorporated, Phoenix Warehouse II, Inc., and Phoenix Leasing Cash Distribution Fund V, L.P. Motion for Summary Judgment," filed by three of the four named defendants (Defendants) on May 15, 2003, in the above-captioned adversary proceeding.

This adversary proceeding was commenced by the Debtor on March 17, 2003, by the filing of a three-count complaint. In Count I, the Debtor seeks a determination of the validity, extent, and priority of certain liens and security interests in both real and personal property encumbering the Debtor's only asset, a hotel located in Clearwater Beach, Florida. The claim in Count II is a challenge of the validity of certain notes, which created the underlying debt that is alleged to be usurious under Florida law. The claim in Count III is identical to the claim in Count II except the challenge is under the usury laws of the State of California.

The following facts as appear from the record, including the Declaration of Gregory D. Kilian, Assistant Vice–President of Phoenix Leasing Incorporated, filed in support of the Motion for Summary Judgment, are as follows.

On January 14, 1998, the Debtor executed a Senior Loan and Security Agreement

No. 3756 (Master Agreement) (Ex. A of Dfs.' Msj) in favor of Amstat Corp. d/b/a American States Leasing (Amstat). Under the Master Agreement, Amstat agreed to make a series of secured loans to the Debtor to be evidenced by one or more promissory notes. The Master Agreement further provided that as security, the Debtor granted to Amstat a perfected first priority security interest in its equipment, machinery, fixtures, intangibles owned by the Debtor or acquired thereafter including all rents, profits, income, and proceeds.

The Master Agreement, which was adopted by a "Corporation Acknowledgment" was executed by the President of the Debtor and was notarized on April 1, 1998, in Hillsborough County, Florida. Attached to the Master Agreement, was a "Terms and Conditions of Senior Loan ad Security Agreement" (Terms & Conditions). Paragraph 8 of the Terms & Conditions provided *inter alia* that Amstat may assign any of the notes and security agreements or its security interest in any or all of the collateral without notice to the Debtor.

On January 18, 1999, the Debtor executed the First Amendment to Senior Loan and Security Agreement No. 3756 (First Amendment) (Ex. B of Dfs.' Msj). The First Amendment identified the Debtor as the "borrower" and Phoenix Leasing Incorporated (Phoenix) as the "lender." The First Amendment in sub-clause (2)(a) provided that as additional security, the Debtor "hereby executes and delivers to Lender a deed of trust or mortgage (the 'Deed of Trust') to grant Lender a perfected mortgage lien on the real property described in the Deed of Trust."

In sub-clause (2)(b) of the First Amendment, it further provided that Phoenix agreed to make one or more loans to the Debtor secured by the previously pledged collateral and by real property of the

Debtor. Finally, the First Amendment also provided, just as the original Master Agreement, that Phoenix may assign any of the notes and security agreement, or deed of trust without notice to the Debtor. *See* Sub-clause (2)(d) of First Amendment.

In connection with the execution of the Master Agreement, also on January 18, 1999, the Debtor executed a Mortgage and Security Agreement (Mortgage) in favor of Phoenix, securing an obligation evidenced by a promissory note in the principal amount of $500,000. (Ex. C of Dfs.' Msj). The Mortgage covered the Debtor's real property located in Pinellas County, Florida, specifically described in the legal description attached as an Exhibit to the Mortgage. The President of the Debtor executed a "Corporate Resolution Authorizing Execution of Trust Deed/Mortgage," which was executed in Pinellas County, Florida. The Mortgage was duly recorded in the Official Record Books of Pinellas County, Book 10393, and beginning at Page 880.

On February 5, 1999, the Debtor executed a "Senior Secured Promissory Note" (First Note), in the principal amount of $179,434.72, in favor of Amstat or its assigns. (Ex. D of Dfs.' Msj). At the top of the First Note, there is a notation that this is "Note No. 01" to the Master Agreement. At the bottom of the second page of the First Note is a stamp that does not appear to be part of the document that states "All of the rights of Phoenix Warehouse II, Inc., hereunder have been assigned to the Bank of California, N.A., as agent." Also, as part of Exhibit D, although it is unclear if it is part of the First Note, is a three-page funding request entitled "Phoenix Leasing Incorporated Funding Request."

On February 5, 1999, the Debtor executed a "Senior Secured Promissory Note" (Second Note), in the principal amount of $130,307.74, in favor of Amstat or its as-

signs. (Ex. E of Dfs.' Msj). At the top of the Second Note is a notation "Note No. 02" to the Master Agreement. At the bottom of the second page of the Second Note is a separate stamp that states as follows "This Takedown has been assigned in its entirety to the trustee under the Indenture dated as of May 1, 1998 among Phoenix Leasing Incorporated, Phoenix Receivables 5–98 Limited Liability Company and the trustee named therein." Also as part of Exhibit E, is a three-page funding request entitled "Phoenix Leasing Incorporated Funding Request."

Although not dated, it appears that Amstat, in written correspondence to the Debtor (First Assignment), informed the Debtor that it had assigned to Phoenix the First Note. (Ex. F to Dfs.' Msj). The Debtor acknowledged the First Assignment on April 1, 1998. Also although not dated, it appears that Amstat, in written correspondence to the Debtor (Second Assignment), informed the Debtor that it had assigned to Phoenix the Second Note. (Ex. F to Dfs.' Msj). The Debtor acknowledged the Second Assignment on January 20, 1999.

On February 5, 1999, Phoenix executed two separate "Assignment of Note and Collateral" (Phoenix Assignments) to Phoenix Warehouse II, Inc. (Phoenix Warehouse), a California corporation. (Ex. G to Dfs.' Msj). Both of the Phoenix Assignments assigned from Phoenix to Phoenix Warehouse the Master Agreement, First Note and Second Note of the Debtor.

On March 5, 1999, the Debtor executed a "Senior Secured Promissory Note" (Third Note), in the principal amount of $129,693.24, in favor of Amstat or its assigns. (Ex. I of Dfs.' Msj). At the top of the Third Note is a notation "Note No. 03" to the Master Agreement. Also as part of Exhibit I, is a two-page funding request

entitled "Phoenix Leasing Incorporated Funding Request, Exhibit A."

On February 24, 1999, Amstat, in written correspondence to the Debtor (Third Assignment), informed the Debtor that it has assigned to Phoenix the Third Note. (Ex. J to Dfs.' Msj). The Debtor acknowledged the Third Assignment on February 24, 1999.

In connection with the Master Agreement, Phoenix Warehouse ⸴ caused two UCC–1 Financing Statements to be filed with the Secretary of the State of Florida: the first on February 16, 1999, which specifically referenced the Master Agreement, and covered the equipment of the Debtor; and the second on February 18, 1999, which specifically referenced the Master Agreement, and covered the equipment of the Debtor. Phoenix Warehouse also caused two UCC–1s to be filed with Pinellas County Official Records (Fixture Filings). Both were filed on February 26, 1999, which covered the equipment of the Debtor. (Ex. N to Dfs.' Msj).

Finally, on February 18, 1999, Phoenix Warehouse caused a UCC–1 Financing Statement to be filed with the Secretary of State for the State of Florida, which named Amstat as the "Debtor" and Phoenix Warehouse as the "Secured Party." (Ex. N to Dfs.' Msj). As an attachment to this UCC–1 is a narrative that states that Amstat as "Seller" and Phoenix have entered into a Master Purchase and Sale/Assignment Agreement, dated July 15, 1997, in which Amstat has assigned to Phoenix, Amstat's interest in the equipment of the Debtor, and references the Master Agreement. The attachment also states that the UCC–1 is filed as a "precaution only."

Phoenix Warehouse also caused to be filed UCC–1s with both the Secretary of State for the State of Florida and in the Pinellas County Official Records, for both the Second Note and the Third Note that

the Debtor executed in connection with the Master Agreement. (Exs. O and P to Dfs.' Msj).

Based upon the foregoing facts, the Defendants assert that they are entitled to summary judgment as a matter of law on all counts of the Complaint. In opposition, the Debtor filed the Affidavit of Ronald B. Hennings, the current President of the Debtor. In his Affidavit, Mr. Hennings avers, *inter alia,* that all of the documents were executed in Florida, as opposed to California. He does not dispute the existence or validity of the loans, although he discusses the interest rates of the various notes as being "usurious."

Summary judgment is appropriate when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The purpose of summary judgment is two-fold: to determine if there are genuine issues for trial and for the moving party to demonstrate that it is entitled to judgment as a matter of law. *Banco Latino International v. Gomez Lopez,* 95 F.Supp.2d 1327, 1332 (S.D.Fla.2000); *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 590 (11th Cir.1994).

To defeat a motion for summary judgment, the non-moving party must do more than simply show that there is some doubt as to the fact of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has satisfied its burden of proof, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion. Moreover, the nonmoving party must demonstrate that the moving party is not entitled to judgment as a

matter of law *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Based upon the foregoing authority, this Court is satisfied that the Motion for Summary Judgment should be granted in part and denied in part. This Court is satisfied that summary judgment is appropriate with respect to Count I, as the same pertains to the personal property of the Debtor. At the hearing to consider summary judgment, the parties agreed that summary judgment was not appropriate with respect to the real property of the Debtor since there was an issue of fact regarding the Mortgage. (6/10/03 transcript, pg. 17). The record reveals that there is no issue of material fact regarding the perfection of the Defendants' interest in the personal property of the Debtor. This Court is satisfied that the security interests in the Debtor's equipment and fixtures were property perfected by the filing of the UCC–1's, with both the Secretary of State for the State of Florida and with the Pinellas County Official Records. Moreover, this Court is equally satisfied that the loan documents were assigned from Amstat to Phoenix, and then from Phoenix to Phoenix Warehouse, and as such, the Defendants are the holder of the security interests against the Debtor's property. Therefore, this Court finds in favor of the Defendants with respect to a portion of Count I, that is that the Defendants have a valid first priority lien on the personal property of the Debtor.

This leaves for consideration Counts II and III of the Complaint, where the Debtor seeks a determination that the notes are usurious. This Court is satisfied that material issues of fact remain to be determined at trial. In order to apply California law, the transaction entered into by the Debtor and the Defendants must

bear a "normal relation" to the State of California. *Burroughs Corporation v. Suntogs of Miami, Inc.*, 472 So.2d 1166 (Fla.1985); *Continental Mortgage Investors v. Sailboat Key, Inc.*, 395 So.2d 507 (Fla.1981); *Blackford v. Commercial Credit Corp.*, 263 F.2d 97 (5th Cir.), *cert. denied*, 361 U.S. 825, 80 S.Ct. 74, 4 L.Ed.2d 69 (1959).

In support of the proposition that California law governs, the Defendants assert that the Master Agreement specifically applies California law, *see* Terms & Conditions, paragraph 16 Jurisdiction and Waiver of Jury Trial.

This Security Agreement and the Notes shall be deemed to have been negotiated, entered into and performed in the State of California and it is understood and agreed that the validity of this Security Agreement and Notes and of any of the terms and provision of such Security Agreement and Notes, as well as the rights and duties of the parties thereto shall be construed pursuant to and in accordance with the law of the State of California, without giving effect to conflicts of law principles.

Moreover, the Defendants assert that since they are organized, headquartered and conduct business in California; the loan documents were processed in California; funding occurred in California; and payment upon the notes is sent to California, all of these facts demonstrate that there is a "normal relation" to California and therefore, California law governs.

In opposition, the President of the Debtor states that the initial transaction was with Amstat, who had its principal place of business in Hillsborough County, Florida; the loan documents were executed in Florida, and therefore, Florida law governs.

Although this Court is inclined to grant summary judgment in favor of the Defendants that California law governs, especial-ly in light of the language in the Terms & Conditions of the Master Agreement, this Court is constrained to deny summary judgment in light of Affidavit by the President of the Debtor, which presents issues of material fact regarding whether or not Amstat indeed had its principal place of business in Florida and whether or not having all negotiations take place in Florida, coupled with the execution of the documents in Florida is sufficient to overcome the express language in the Master Agreement. Therefore, summary judgment is inappropriate as to Counts II and III.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Defendants' Phoenix Leasing Incorporated, Phoenix Warehouse II, Inc., and Phoenix Leasing Cash Distribution Fund V, L.P. Motion for Summary Judgment be, and the same is hereby, granted in part and denied in part. It is further

ORDERED, ADJUDGED AND DECREED that as to Count I, the Defendants have a valid first lien on the personal property of the Debtor. A separate Partial Final Judgment shall be entered in accordance to the foregoing. It is further

ORDERED, ADJUDGED AND DECREED that a pre-trial conference shall be held on August 5, 2003, beginning at 1:45 p.m. at Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Tampa, Florida, to frame the remaining issues for trial.